UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA TAYLOR,<br><br>              Plaintiff,<br>v.<br><br>ACCREDITED HOME LENDERS, INC., and ACCREDITED HOME LENDERS HOLDING COMPANY,<br><br>              Defendants. | Civil No.07cv1732 JAH (JMA)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br>**[Doc. No. 5]** |

## INTRODUCTION

On August 31, 2007, Plaintiff, a resident of Alabama, filed a complaint, on behalf of herself and other similarly situated African American homeowners, against Accredited Home Lenders, Inc., and Accredited Home Lenders Holding Company. Plaintiff alleges Defendants' subjective finance charges in their "discretionary pricing policy" have a widespread discriminatory impact on African American applicants for home mortgage loans, in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et. seq.* and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et. seq.* Complaint at 2. The discretionary pricing policy allows brokers to impose discretionary mark-ups as additional points in interest. Id. at 8. Plaintiff alleges the discretionary pricing policy, "although facially neutral. . .has a disproportionately adverse effect on African Americans compared to similarly-situated Caucasians in that African Americans pay disparately more discretionary charges than similarly-situated Caucasians." Id. at 8-9.

Plaintiff further alleges she entered into a mortgage transaction with Accredited on July 29, 2005, and was subject to Defendant's discretionary pricing policy, and, as a result was charged a disproportionately greater amount in non-risk-related credit charges than similarly situated Caucasian persons. Id. at 10. She seeks certification of the class, declaratory relief, injunctive relief, disgorgement and damages.

Defendants filed a motion to dismiss on November 5, 2007. Plaintiff filed an opposition on January 17, 2008, and Defendants filed a reply on February 19, 2008. Plaintiff filed a notice of recent decision in support of her opposition on February 25, 2008, and Defendant filed a response on April 30, 2008. A hearing was held on May 5, 2008, after which the Court took the matter under submission. Plaintiff filed a notice of recent decision in support of her opposition to the motion on June 1, 2006. Defendants filed a response to the notice on June 9, 2008, and a notice of recent decision on June 10, 2008. Plaintiff filed a response to Defendants' notice of recent decision on June 12, 2008. As set forth below, the Court DENIES the motion.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. ). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir.

2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendants seek to dismiss the complaint (1) as time barred, (2) as an improper disparate impact claim, because neither the FHA nor the ECOA permit disparate impact claims (3) for failure to state a claim of disparate impact under the FHA or the ECOA, (4) because the ECOA does not permit Plaintiff to bring claims under both the ECOA and the FHA; (5) the ECOA claim is prohibited by the multiple-creditor rule; (6) Plaintiff fails to state any claims against Accredited Home Lenders Holding Company (the "Holding Company").

**I. Statute of Limitations**

Defendants argue Plaintiffs claims are barred, because they were filed beyond the two year statute of limitations. A civil action seeking relief under the FHA must be commenced "no later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice. . ." 42 U.S.C. § 3613(1)(A). An action brought under the ECOA must be commenced no more "than two years after the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). Plaintiff alleges she entered into a mortgage transaction with Defendants and was subject to the discriminatory credit charges on July 9, 2005. Plaintiff's action filed on August 31, 2007, is outside the two year

1 limitations period.  Plaintiff argues the continuing violation doctrine, fraudulent
2 concealment and the discovery rule demonstrate her complaint is timely.

**A.  Continuing Violation Doctrine**

Plaintiff argues Defendants discriminatory practices have been continuous and ongoing and her complaint is timely under the continuing violation doctrine.  Defendants argue the complaint alleges the extension of credit at a higher rate is the violation, as such the violation occurred and terminated when the loan closed.  They argue the allegations support a single isolated incident.  Defendants maintain Plaintiff is confusing continuing violation with continuing effects.

In Havens Realty Corp. v. Coleman, the Supreme Court held that where a plaintiff challenges an ongoing discriminatory practice rather than an isolated incident of conduct, and the practice continues into the limitations period, the complaint is timely if filed within the statutory period from the last occurrence of the practice.  455 U.S. 363, 380-81 (1982).  The Court reasoned the purpose of statutes of limitations is to keep "stale" claims out of court and there is no staleness issue with a challenge to continuing violations.  Id. at 381.  The Court determined the plaintiffs' FHA claims alleging the defendants' practice of "racial steering" - encouraging patterns of segregation in housing by steering members of a racial group to buildings occupied by members of the same race and steering them from buildings occupied by members of other races - deprived them of the benefits of living in an integrated neighborhood were not based upon an isolated incident of discrimination, but an ongoing practice of which the last incident occurred within the limitations period.  Id.

Plaintiff maintains she suffers an actionable wrong every time she makes a mortgage payment improperly inflated by the discretionary pricing policy.  Defendant argues Plaintiff alleges an isolated incident, the extension of credit at a higher rate, which occurred and terminated when the loan closed.

Here, the alleged specific discriminatory act is being charged a higher amount in non-risk related credit charges than similarly situated Caucasian persons based upon

Defendants' discretionary pricing policy. Plaintiff is being charged a higher amount in credit charges than non-African Americans every time she makes a payment on the loan. The Court agrees that each mortgage statement that seeks inflated payments for the loan based upon discriminatory terms is another violation visited upon Plaintiff. As such, the Court finds, as alleged, the complaint is timely.

**B.  Fraudulent Concealment and Discovery Rule**

Because this Court finds the complaint timely pursuant to the continuing violation doctrine, fraudulent concealment and the discovery rule will not be addressed.

**II.  Whether the ECOA or FHA Allows Disparate Impact Claims**

Defendants argue the decision in Smith v. City of Jackson, 544 U.S. 228 (2005) demonstrates neither the ECOA or the FHA allows disparate impact claims and lower court decisions allowing disparate impact claims are no longer viable precedent. They maintain the Smith opinion indicates the text of an anti-discrimination statute determines whether the statute permits disparate impact claims and the language of ECOA section 701 and the FHA section 805 mirror Title VII section 703(a)(1) and Age Discrimination in Employment Act ("ADEA") section 4(a)(1) which permit disparate treatment claims but not disparate impact claims. They further argue neither of the statutes has any language focusing on the effects of actions comparable to the language of Title VII section 703(a)(2) or ADEA section 4(a)(2) that support disparate impact claims.

Defendants maintain the Ninth Circuit's holding in Keith v. Volpe, 858 F.2d 467 (9th Cir. 1988), permitting disparate impact claims under the FHA is no longer viable because the court relied upon precedent either expressly overruled prior to Smith or, in the aftermath of Smith is no longer viable. They further maintain the holding in Miller v. American Express Co., 688 F.2d 125 (9th Cir. 1982), permitting disparate impact claims under the ECOA is no longer viable in light of Smith.

Plaintiff argues federal courts in the Ninth Circuit and across the United States have held disparate impact claims are viable under both the FHA and the ECOA. In light of this fact, Plaintiff contends this Court must reject Defendants argument to the contrary.

She also argues the legislative history reveals Congress intended to allow disparate impact claims under the FHA, and case law and legislative history confirm disparate impact claims are valid under the ECOA. Plaintiff asserts federal agencies charged with implementing the statutes agree that disparate impact claims are proper.

Plaintiff further argues the cases relied upon by Defendants do not implicate disparate impact claims under the FHA or the ECOA, but involve the ADEA and Title VII. She further argues Smith endorses the type of "thoughtful" analysis of legislative history applied in Miller to determine the scope of any given statute and maintains neither the Supreme Court or the Ninth Circuit have called the validity of Keith into question. Plaintiff also submits a district court case from the central district, Garcia v. Country Wide Financial Corp., EDCV 07-1161, in support of her contention that Smith has not affected the Ninth Circuit's opinions in Keith and Miller.

In reply, Defendants argue Plaintiff wrongly states Smith is limited in application to the ADEA and Title VII. Defendants argue the Ninth Circuit's decisions that the FHA and the ECOA permit disparate impact claims were based on an analogy to Title VI jurisprudence and not the statutory text of either act. As such, they argue the Court's discussion in Smith of Title VII jurisprudence is directly relevant to whether the FHA and ECOA permit disparate impact claims. They maintain cases that base disparate impact claims on the purpose of a statue rather than the statutory text, such as Keith and Miller cannot be reconciled with Smith. Defendants contend resorting to the legislative history is unnecessary, because the language of the statute is plain.

There are no court decisions finding the ECOA and the FHA do not permit disparate impact actions in light of Smith. In fact, there are numerous decisions recognizing disparate impact claims under the statutes following the decision issued in Smith. See Budnick v. Town of Carefree, 518 F.3d 1109 (9th Cir. 2008) (Providing elements necessary to establish a prima facie case of disparate impact under the FHA); National Community Reinvestment Coalition v. Accredited Home Lenders Holding Co., ___ F.Supp.2d ___, 2008 WL 3974310 (D.D.C.) (Finding Smith does not preclude

1  disparate impact claims under the FHA); Ramirez v. Greenpoint Mortg. Funding, Inc.,
2  2008 WL 2051018 (N.D.Cal.) (Finding disparate impact claims cognizable under both
3  the FHA and the ECOA); Masudi v. Ford Motor Credit Co., 2008 WL 2944643
4  (E.D.N.Y) (Recognizing the ECOA allows disparate impact actions); Zamudio v. HSBC
5  North America Holdings, Inc., 2008 WL 517138 (N.D.Ill.) (Filing disparate impact claims
6  are available under both the ECOA and the FHA); Groach Associates #33. L.P. v.
7  Louisville/Jefferson County Metro Human Relations Com', 508 F.3d 366 (6th Cir. 2007)
8  (Discussing burden-shifting in disparate impact claims brought under the FHA);
9  Beaulialice v. Federal Home Loan Mortg. Corp., 2007 WL 744646 (M.D.Fla.) (Finding
10 the plaintiff may bring a disparate impact claim under the FHA); Affordable Housing
11 Development Corp. v. City of Fresno, 433 F.3d 1182 , 1195 (9th Cir. 2006) (Recognizing
12 disparate impact claims under the FHA).

13      In light of the various post-Smith court decisions finding disparate impact claims
14 cognizable under the FHA and the ECOA, including those in the Ninth Circuit, this Court
15 finds Smith has not overruled prior precedent recognizing the ECOA and the FHA permit
16 disparate impact claims.  The Ninth Circuit clearly recognizes the FHA and the ECOA
17 permit discrimination claims under a theory of disparate impact as well as disparate
18 treatment.  See Budnick , 518 F.3d 1109; Affordable Housing Development Corp., 433
19 F.3d 1182;  Harris v. Itzhaki, 183 F.3d 1043 (9th Cir. 1999); Gamble v. City of
20 Escondido, 104 F.3d 300, 304 (9th Cir. 1997); Gamble v. City of Escondido, 140 F.3d
21 300, 304-05 (9th Cir. 1996).  See Miller v. American Exp. Co., 688 F.2d 1225, 124 (9th
22 Cir. 1982).  Accordingly, Defendants' motion to dismiss on this issue is denied.

23 **III.  Cognizable Disparate Impact Claim**

24      Defendants argue, even if the FHA and the ECOA permit disparate impact claims,
25 Plaintiff fails to state a cognizable disparate impact claim.  They maintain Plaintiff fails
26 to allege facts identifying a specific practice or policy that gives rise to the alleged disparate
27 impact, fails to allege facts demonstrating disparate impact because she provides no
28 statistical evidence regarding Defendants practices or policies, and fails to allege facts that

the policy caused any statistical disparity.

Plaintiff argues she is not required to prove a prima facie case for discrimination at this stage, because the Supreme Court has recognized the prima facie case is an evidentiary standard and not a pleading requirement. She maintains she has satisfied her burden by identifying an outwardly neutral policy which, if her allegations are proven, negatively and disproportionately affects African Americans. Specifically, Plaintiff contends she identified a system of subjective decision-making as the discriminatory culprit which disparately impacts African Americans.

Although a plaintiff is not required to make out a prima facie case at this stage of the proceedings, Plaintiff must sufficiently plead a disparate impact claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246 (9th Cir. 1997) (Holding the district court erred in requiring the plaintiff to allege facts supporting a prima facie case in the complaint). To establish a disparate impact claim, a plaintiff must show an outwardly neutral policy or practice that has a significant adverse or disproportionate impact on members of a protected group. See Pottenger v. Potlatch Corp., 329 F.3d 740 (9th Cir. 2003) (Discussing standard for a prima facie claim of disparate impact under the ADEA); Paige v. California, 291 F.3d 1141 (9th Cir. 2002) (Title VII disparate impact claim); Pfaff v. U.S. Dept. of Housing and Urban Development, 88 F.3d 739, 746 (9th Cir. 1996) (FHA disparate impact claim).

**1. Specific Practice or Policy**

Defendants argue Plaintiff's allegations regarding the discretionary pricing policy are insufficient to state a specific practice or policy, because she does no more than complain the pricing has a subjective component and she does not identify the subjective factors considered under the pricing policy. Plaintiff argues she sufficiently identified the subjective decision making system of allowing brokers to impose discretionary charges and interest mark-ups as the practice that disparately impacts African Americans.

"A disparate impact claim must challenge a specific business practice." Pottenger, 329 F.3d at 749. This Court finds Plaintiff sufficiently alleges Defendants engage in an

"outwardly neutral practice" through their discretionary pricing policy which includes computing a financing rate through objective and subjective factors. Complaint ¶¶ 25 - 30. She specifically identifies and challenges the policy of authorizing brokers to apply subjective, non-risk based factors to impose rate "mark-ups."

**2. Disparate Impact and Causation**

Defendant argues Plaintiff fails to allege disparate impact, because the complaint contains no statistical evidence regarding Defendants' practices or policies or that Defendants' policy caused any statistical disparity. Plaintiff maintains her statistical allegations in her complaint implicate Defendant, because the Home Mortgage Disclosure Act ("HMDA") data, which is derived from a list of subprime lenders, including Defendant, was used by various studies and reports.

The complaint contains the following allegations: A report from the United States Inspector General shows African Americans were much more likely to get higher-priced loans. Complaint ¶ 8. According to Federal Reserve data the majority of African Americans who took out mortgages in 2005 were put into higher cost sub-prime loans. Id. ¶ 10. Upper-income African American homeowners are more likely to receive a sub-prime loan while refinancing than lower-income Caucasian homeowners. Id. The Center for Responsible Lending performed a study of HMDA data and found African Americans are 31% to 43% more likely to receive a higher fixed-rate loan than Caucasians and are 15% more likely to receive a higher rate than Caucasians on adjustable rate loans. Id. ¶ 15. A report from the National community Reinvestment Coalitions determined that lending institutions engaged in "pervasive discriminatory and predatory practices." Id. ¶ 16. The HMDA data demonstrates 32.4% of high costs loans were made to African Americans in Birmingham compared to 8.7% to Caucasians. Id. ¶ 17.

Plaintiff also alleges Defendant offered sub-prime loans directly to consumers and through mortgage brokers, and African American customers pay disparately more discretionary charges than similarly-situated Caucasians through the sub-prime loans. Id. ¶¶ 21, 32. She further alleges "statistical analysis of discretionary charges imposed on

African American and Caucasian customers of other mortgage companies that use credit pricing systems structured like that of Accredited has revealed that African-Americans. . .are substantially more likely than similarly-situated Caucasians to pay such charges." Id. ¶ 32.

Plaintiff provides statistical information of the discriminatory affect on African Americans in the complaint. These reports cited include HMDA data submitted by Defendant regarding its loans. Construing all inferences in Plaintiff's favor, the Court finds Plaintiff sufficiently alleges Defendant's policy resulted in a disproportionately adverse impact on African Americans as compared to Caucasians. Accordingly, Plaintiff states a claim for disparate impact.

**IV. Whether Plaintiff Can Maintain a Claim Under both the ECOA and the FHA**

Defendant argues the ECOA prohibits a plaintiff from bringing a mortgage lending-related discrimination claim under both the ECOA and the FHA and asks the Court to dismiss the FHA claim. Plaintiff argues she is able to set forth two or more claims for relief in the alternative as a matter of procedure. She further argues nothing in the statutory language of the ECOA alters that procedure.

The ECOA prohibits recovery under both the ECOA and the FHA. See 15 U.S.C. § 1691e(i) ("No person aggrieved by a violation of this subchapter and by a violation of section 3605 of Title 42 shall recover under this subchapter and section 3612 of Title 42, if such violation is based on the same transaction."). There is no language to prohibit a person from asserting claims under both statutes. Additionally, as noted by Plaintiff, Rule 8 of the Federal Rules of Civil Procedure allows a party to set out alternative statements of a claim. See FED.R.CIV.P. 8(d)(2). Accordingly, Defendants motion to dismiss the FHA claim on this basis is denied.

**V. Whether the Multiple Creditor Rule Bars Plaintiff's ECOA Claims**

Defendants argue Plaintiff's claims that the mortgage brokers are agents of Defendants is wrong as a matter of law, because Alabama law requires brokers to work on behalf of borrowers, and brokers are considered fiduciaries with borrowers in California.

Such a relationship, they argue, conflicts with the allegation that the brokers were agents of Defendants.  They further argue Plaintiff's attempt to hold them liable for discrimination by brokers is barred by the multiple creditor rule, because Plaintiff does not allege Defendants knew or had reasonable notice that Plaintiff's broker "marked up" Plaintiff's loan in a discriminatory manner.

Plaintiff maintains she adequately alleged facts demonstrating mortgage brokers are agents of Defendants.  She argues mortgage brokers' fiduciary duties to borrowers do not preclude an agency relationship with the lender, and further argues whether an agency relationship exists is a question of fact and is a proper area for discovery.  Plaintiff contends she alleges Defendants had notice of the racially-discriminatory effect of the policy and therefore may be held liable for the actions of another creditor's actions with regard to the policy.

Plaintiff alleges Defendants compensated mortgage brokers who arranged business for them and authorized mortgage brokers who had to sign a contract with them to accept applications on its behalf, quote financing rates and term, inform credit applicants of its financing options and originate finance transactions using Defendants' forms. Complaint ¶¶ 22, 23.  She further alleges Defendant provides brokers with credit applications, loan contracts and other financing forms along with instructions on filling necessary documents. Id. ¶ 24.  Plaintiff also alleges Defendants authorized brokers to impose discretionary mark-ups as additional points in interest and shares the additional income with the broker. Id. ¶ 29.  She also alleges Defendants knew or should have know that their pricing system had a discriminatory impact, because there were widely circulated reports of high profile actions by the United States Department of Justice involving similar pricing policies and widely reported settlements involving similar pricing policies. Id. ¶ 60, 61.

The Court finds Plaintiff alleges facts supporting an agency relationship between Defendants and the brokers.  Defendants fail to cite any authority, and this Court's own research found no law preventing a broker from acting as a lender's agent, or that a

broker's duties to a borrower precludes an agency relationship. The statutes cited by Defendants, which discuss a brokers duties to a borrower, do not support Defendants' assertion. In fact, the California Financial Code, while discussing the duties owed a borrower by a broker, recognizes a broker may act as an agent for another party to a loan transaction. See Cal.Fin. Code § 4979.5. Therefore, Defendants' argument that, as a matter of law, the brokers cannot act as their agents fails.

Furthermore, the Court finds Plaintiff alleges Defendants knew or had reasonable notice of the discriminatory impact of the brokers' application of the subjective component of Defendants' discretionary pricing policy. See 12 C.F.R. § 202.2(l) ("A person is not a creditor regarding any violation of the [ECOA] of this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy or practice that constituted the violation. . .").

**VI.  Claim Against Accredited Home Lenders Holding Company**

Defendants argue Plaintiff's allegations do not refer to Accredited Home Lenders Holding Company ("Holding Company"). They contend there are no allegations that the Holding Company is involved in Accredited Home Lenders, Inc.'s lending programs and the complaint is devoid of any allegations against the Holding Company.

Plaintiff argues she plead allegations jointly against both Accredited Home Lenders, Inc. and the Holding Company and the Holding Company is a member of the lending industry. Plaintiff argues Accredited Home Lenders and the Holding Company both engaged in the offensive conduct.

The allegations of the complaint do not distinguish between Accredited Home

//
//
//
//
//
//

1  Lenders and the Holding Company.  As such, Plaintiff sufficiently alleges the Holding
2  Company engaged in the alleged wrongful conduct.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Defendants' motion to dismiss is **DENIED**.

DATED:  September 19, 2008

JOHN A. HOUSTON
United States District Judge